UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

Case No. 23-CR-20152

v.

HON. MARK A. GOLDSMITH

JACK EUGENE CARPENTER, III,

      Defendant.

_____/

**OPINION & ORDER GRANTING THE GOVERNMENT'S MOTION FOR EVALUATION PURSUANT TO 18 U.S.C. § 4246 (Dkt. 239)**

Before the Court is the Government's motion for a dangerousness evaluation pursuant to § 18 U.S.C. § 4246 (Dkt. 239) as a predicate for possible civil commitment of Defendant Jack Eugene Carpenter, III. Having been previously found incompetent by the Court, Carpenter was subjected to competency restoration efforts, which a mental health professional now reports have been unsuccessful. Because the Government believes compulsory restoration efforts are not warranted, it presently asks that Carpenter be evaluated for dangerousness and possible civil commitment. For the reasons that follow, the Court grants the motion.[1]

### I. BACKGROUND

In March 2023, Carpenter was indicted on a felony charge of threat to another by interstate communication, in violation of 18 U.S.C. § 875(c), for posting on Twitter that he was traveling from Texas to Michigan and threatening to kill Jewish members of the Michigan government.[2]

---

[1] In addition to the Government's motion, the briefing includes Carpenter's response (Dkt. 249) and the Government's reply (Dkt. 252). The Court held a hearing on the motion on July 21, 2025.

[2] Twitter is now known as X.

1

Indictment at PageID.31–32 (Dkt. 15).

Based on Carpenter's social media posts and statements during interviews with law enforcement, the Government moved under 18 U.S.C. § 4241 for the Court to commit Carpenter to the custody of the Attorney General of the United States for a psychiatric or psychological examination to determine whether he was competent to stand trial.[3]  See Gov. Mot. for Competency Evaluation at PageID.41–46 (Dkt. 20).  The Court granted the Government's motion, finding that the Government had identified "several incidents of irrational behavior exhibited by Carpenter that create reasonable cause to doubt his mental competency."  See 6/22/23 Order at PageID.225 (Dkt. 43).  The Court ordered that a psychiatrist or psychologist employed by the United States be appointed to examine Carpenter's mental condition and file a written report with the Court.  Id. at PageID.228.

Dr. Ryan Nybo, a forensic unit psychologist with the U.S. Bureau of Prisons, evaluated Carpenter and submitted a report.  Dr. Nybo found that Carpenter met the diagnostic criteria for delusional disorder and recommended formal competency restoration procedures at a federal medical center.  See 10/24/23 Competency Report at PageID.1597 (Dkt. 287 *SEALED*).  Dr. Nybo explained that "Carpenter harbors a complex delusional system that involves a belief that he is being individually targeted for exposing that the COVID-19 vaccine was being used illegally. He believes the maker of the vaccine, Pfizer, is a quasi-military organization with ties to the Israeli

---

[3] 18 U.S.C. § 4241(a) states: "At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant.  The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

government. He further believes that Israel had infiltrated the United States government and a plot was devised to have him killed and made to look like a suicide . . . . Carpenter is preoccupied with these beliefs and has no insight into his mental illness." Id. at PageID.1595.

The Court held a competency hearing on December 11, 2023, at which Dr. Nybo testified at length regarding his evaluation. See 12/11/23 Hr'g Tr. at PageID.503–563 (Dkt. 92). Carpenter also testified. Id. PageID.564–593. The Court later scheduled a second competency hearing and directed the parties "to be prepared to address the specific ways in which Defendant's alleged mental condition allegedly impairs his ability to assist in his defense." See 3/28/24 Order. The Court also invited the parties to submit supplemental briefs; the Government did so. See Gov. Suppl. Br. (Dkt. 110). The second competency hearing was held on April 4, 2024.

On May 10, 2024, the Court issued an opinion and order finding Carpenter not competent to stand trial. See 5/10/24 Order (Dkt. 124). In that opinion, the Court concluded that Carpenter had a "rational understanding of these proceedings." Id. PageID.728. But the Court concluded that Carpenter was not competent based on an inability to assist in his defense, because Carpenter's current state of mental health will not allow him to "rationally assist his counsel." Id. at PageID.731.

Pursuant to 18 U.S.C. § 4241(d),[4] Carpenter was committed to the custody of the Attorney

---

[4] 18 U.S.C. 4241(d) states: "If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
   (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
   (2) for an additional reasonable period of time until—
      A. his mental condition is so improved that trial may proceed, if the court finds

General for competency restoration. 5/14/24 Order at PageID.740 (Dkt. 126). The Court ordered the director of the facility, or his or her designee, where Carpenter was hospitalized to provide the Court a report, following the treatment period, on Carpenter's condition and whether he had recovered to the extent that he was able to understand the nature and consequences of the proceedings against him and could assist properly in his defense. Id. at PageID.741.

Carpenter underwent competency restoration from November 18, 2024 until March 18, 2025. See 4/16/25 Competency Report at PageID.1600 (Dkt. 288 *SEALED*). At the end of the restoration period, Dr. Cynthia Turner opined that Carpenter remained incompetent to stand trial and likely would not regain competency in the foreseeable future without anti-psychotic medication. Id. at PageID.1599.

Concluding that involuntary medication was not warranted under Sell v. United States, 539 U.S. 166 (2003), the Government filed the instant motion for an evaluation, under 18 U.S.C. § 4246, as to Carpenter's dangerousness with a view towards possible civil commitment.[5] Mot.

---

that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
  B. the pending charges against him are disposed of according to law; whichever is earlier.
If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248."

[5] 18 U.S.C. § 4246(a) states: "If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined. The clerk shall send a copy of the certificate to the person, and to the attorney for the Government, and, if the person was committed pursuant to section 4241(d), to the clerk of the

at PageID.1197–1198.  At the July 21, 2025 hearing, Dr. Turner and Carpenter testified.  7/21/25 Hr'g Tr. at PageID.1436–1499; 1501–1522 (Dkt. 274).

Dr. Turner, a clinical psychologist with the U.S. Bureau of Prisons, had been assigned as the primary clinician for Carpenter's competency restoration.  7/21/25 Hr'g Tr. (Dkt. 274) at PageID.1437–1439; 1445.  Dr. Turner received her license to practice psychology in 2020 after completing her doctorate degree.  Id. at PageID.1437–1438.  Dr. Turner has conducted approximately 20 to 30 competency evaluations and performed 10 to 20 competency restorations and evaluations.  Id. at PageID.1440.  After conducting a voir dire examination, the defense did not object to Dr. Turner being qualified as a forensic psychologist.  Id. at PageID.1443.

As part of her evaluation, Dr. Turner had conducted weekly rounds with Carpenter over the four months that he was hospitalized.  Id. at PageID.1452.  She also had interviewed Carpenter three times—once upon intake, once in January 2025, and in March of 2025.  Id. at PageID.1452, 1455, 1458.

As to the initial interview, Dr. Turner reported that Carpenter was "engaged and cooperative" but that he "presented with a flat affect, showing little emotional expression." 4/16/25 Competency Report at PageID.1605.  Carpenter's thought process "appeared organized and goal-oriented with indication of delusional ideation." Id.  For example, Carpenter "quoted penal code, advised he was suing several parties for conflict of interest, and reported that he had

---

court that ordered the commitment.  The court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another.  A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section."

Section 4246(b) states: "Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)."

5

referred the Judge in his case for a competency evaluation." Id. Carpenter also declared that he was exempt from the laws of the United States because he was a sovereign citizen. Id. After the intake interview, Carpenter was not prescribed psychotropic medication. Id.

During weekly rounds, Carpenter denied all mental health symptoms and was able to appropriately describe the purpose of his evaluation. Id. Dr. Turner and the psychiatric provider spoke with Carpenter about psychotropic medication eight times. Id. Each time, Carpenter declined to take the medication. Id. For example, on one occasion, when asked about medication, Carpenter responded, "Why are you trying to medicate me?" and denied having delusional thoughts. Id. About a week later, when asked about medication, Carpenter responded, "Why do you keep asking me this? It's not going to change." Id. at PageID.1605–1606.

As to the January 2025 interview, Dr. Turner opined that Carpenter "displayed a good factual knowledge of legal concepts" and properly identified his current charges and knowledge of the legal system. Id. at PageID.1606. But Carpenter was unable to apply this knowledge to his own situation. Id. For example, he explained that the "Judge misinterpreted his argument in court and that he had a 'lawful' right to 'stop the lawful commission of a crime.'" Id. He also "encouraged" Dr. Turner to conduct her own research into "various governmental conspiracy theories (i.e., the experimental COVID-19 vaccination and the intentional release of COVID by Defense Advanced Research Projects Agency)." Id. Dr. Turner concluded that while Carpenter was able to understand legal concepts, he was unable to apply them to his current situation because of the influence of his delusional beliefs. Id.

In his March 2025 interview, Carpenter was "cooperative" but "difficult to redirect as he preferred to discuss idiosyncratic beliefs related to governmental conspiracies and his current legal situation." Id. at PageID.1607. For example, he stated that he had evidence that "SARS COVID

6

… was not a leak; it was an intentional act as a means of moving money in a money laundering scheme," which was "controlled by Israeli citizens." Id. When Dr. Turner tried to discuss his mental health symptoms and diagnosis, he digressed into beliefs surrounding QAnon where he reported that he found "embedded messages" containing his daughter's birthday and the date of his declaration of sovereignty. Id. at PageID.1608. He also stated that a U.S. House of Representatives Intelligence Report "proved" that his beliefs were not delusional. Id.

In addition to these meetings, Dr. Turner also reviewed 13 handwritten letters that Carpenter sent her, materials from this case, materials from his State of Michigan case, and Dr. Nybo's evaluation. 7/21/25 Hr'g Tr. at PageID.1460–1462. Ultimately, like Dr. Nybo, Dr. Turner found that Carpenter meets the diagnostic criteria for delusional disorder, grandiose and persecutory types. 4/16/25 Competency Report at PageID.1617. Dr. Turner opined that research indicates that individuals with delusional disorder can be restored to competency but that Carpenter's refusal to take medication will continue to "significantly impair" his competency. Id.

Carpenter also testified during the hearing. He spoke about the defenses that he would potentially assert, and he answered questions about some of his motions and letters related to his case. See 7/21/25 Hr'g Tr. at PageID.1502–1507. As to potential defenses, Carpenter stated that the "original defense" that he wanted to use "was a defense of necessity, that [his alleged crime] was necessary in order to stop the ongoing commission of crimes…being committed by people in government." Id. at PageID.1503. He explained that there are also defenses related to "subject matter, territorial and in personam jurisdiction" but that these arguments are "distinct from a defense if [his case] goes to trial." Id. at PageID.1504. He also acknowledged that there were some defenses to which his counsel Mr. Nogues was receptive and other defenses to which counsel was not receptive. Id. at PageID.1505–1506.

7

Carpenter was also asked about some of his filings with this Court and the United States Supreme Court. See id. at PageID.1512–1521. For example, when asked whether he believed that several U.S. Government officials were fired in response to the pro se writ of mandamus he sought from the Supreme Court, he stated that he believed that there is an "adequate reason to see an association" between his filing and the firing of the "head of computer cyber security." Id. at PageID.1516. He also confirmed that he believed that officials in the U.S. Government were tracking his case and his filings and that they were worried that he was going to expose truths related to COVID-19, which he alleges are "international terrorism." Id. at PageID.1516–1517.

## II. ANALYSIS

There are two questions before the Court: (i) whether Carpenter is presently competent to stand trial; and (ii) if Carpenter is not competent, whether the Court should grant the Government's motion for an evaluation pursuant to 18 U.S.C. § 4246 to assist in determining whether Carpenter presents a substantial risk of bodily injury to others or serious danger to property of others. For the reasons that follow, the Court finds Carpenter not competent to stand trial and grants the Government's motion for an evaluation pursuant to § 4246.

"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." Medina v. California, 505 U.S. 437, 439 (1992). After a hearing, if a district court finds "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the defendant must be committed to the custody of the Attorney General, who will "hospitalize the defendant for treatment in a suitable facility." 18 U.S.C. § 4241(d). The length of the hospitalization is for a reasonable period

8

of time up to four months "to determine whether there is a substantial probability that in the foreseeable future" the defendant will regain competency so that the trial may proceed. Id. § 4241(d)–(d)(1). The Attorney General may then hold the defendant for an additional period, either to allow for competency to be restored if the court finds there is a substantial probability that this will happen, or until disposition of the pending charges, whichever is earlier. Id. § 4241(d)(2). If at the end of this additional time, the defendant's "mental condition has not so improved" as to allow the criminal proceedings to continue, he is "subject to the provisions of section[] 4246 []," which would allow for an evaluation and civil commitment. Id. § 4241(d). This case is now at this step.

The Court will first examine his competency and then the application of § 4246.

### A. Competency

The test for competency is whether the defendant has (i) "a rational as well as factual understanding of the criminal proceedings against him" and (ii) "a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." United States v. Dubrule, 822 F.3d 866, 875 (6th Cir. 2016) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).

The Court concludes that Carpenter remains incompetent. When the Court found Carpenter not competent on May 10, 2024, its analysis focused on Carpenter's inability to assist with his defense because Carpenter's delusions prevented him from developing a defense strategy based on anything other than his delusions. 5/10/24 Order at PageID.730–731. The Court reached this conclusion based on a variety of evidence, including Carpenter's numerous pro se filings arguing that the Court lacks personal jurisdiction over him because he is the ruler of a sovereign nation. Id. at PageID.730. The Court also found that Carpenter's defense based on "self-defense"

9

was grounded in his delusional belief that he was a target of a vast conspiracy which, he incorrectly believed, justified his use of threats. Id. at PageID.731. At the time, the Court was also concerned that Carpenter would not work with any counsel appointed to him, not just Mr. Nogues, if that counsel disagreed with his delusional beliefs. Id.

The Court's concerns from May 2024 are still present today. Carpenter's delusions still interfere with his ability to develop a defense strategy based on anything but his delusions. This is evidenced by Dr. Turner's report and testimony, Carpenter's testimony, and the twenty pro se motions and seventy-two letters Carpenter has filed since July 1, 2024 where he largely presents arguments related to his delusions, including that the Court does not have jurisdiction over him and that his plight is the result of a conspiracy against him.[6]

During the hearing held on July 21, 2025, Carpenter reiterated many of his delusional beliefs. See 7/21/25 Hr'g Tr. at PageID.1512–1518. He also repeated his self-defense theory, which he now characterizes as a "defense of others" defense. Id. at PageID.1520. Carpenter argues that the defense he intends to put forward has nothing to do with whether he can assist in his own defense. Id. In his testimony, he mentioned previous disagreements with Mr. Nogues, as well as his understanding of the theories of his case that Mr. Nogues would and would not entertain. Id. at 1505; 1511–1512. Carpenter insisted that the "disagreements aren't incompetence, it's just disagreements on strategy." Id. at PageID.1511.

The Court does not see these disagreements as merely strategy based. Rather, Carpenter continues to repeat defenses and delusional theories, demonstrating that he has not abandoned his

---

[6] For pro se motions referencing his jurisdictional argument, see, e.g., 7/1/24 Mot. (Dkt. 135); 9/10/24 Mot. (Dkt. 153); 10/25/24 Mot. (Dkt. 174). For his pro se motions referencing the conspiracy against him, see e.g., 3/18/25 Mot. (Dkt. 211); 4/1/25 Mot. (Dkt. 218); 10/5/25 Mot. (Dkt. 282).

delusions. The status quo ante has not changed—Carpenter's delusions will prevent him from developing a defense strategy based on anything other than his delusions.

The Court also does not find a substantial probability that an additional restoration period will restore Carpenter's fitness to stand trial without medication. Dr. Turner opined that she does not believe that Carpenter's competency will be restored without medication. 4/16/25 Competency Report at PageID.1618. Carpenter has been unwilling to voluntarily take antipsychotic medication throughout the pendency of this case and has been unwavering in this decision. The Court does not find a "substantial probability" that additional hospitalization will allow competency to be restored. § 4241(d)(2)(A). Carpenter is still not fit to stand trial and thus he is subject to the provisions of § 4246. See § 4142(d).

### B. Section 4246 Evaluation

The Government argues that to institute proceedings under § 4246, the Court "may order that a psychiatric or psychological examination of the defendant be conducted" and requests that the Court order such examination. Mot. at PageID.1199–1200. For the Court to order an evaluation under § 4246, it must determine whether Carpenter is (i) still committed to the custody of the Attorney General under § 4241(d) and thus (ii) can be subject to civil commitment proceedings under § 4246.

Carpenter argues that he is no longer in the custody of the Attorney General because he is in the custody of the U.S. Marshals Service, reasoning that he is not held under § 4241. Resp. at PageID.1276. He also argues that the Court can only hold a civil commitment proceeding if the director of the facility where Carpenter is hospitalized certifies that his release would create a substantial risk of bodily injury to another person. Id. Dr. Turner did not make that certification, as her task was a determination of competency—not dangerousness. See 5/14/24 Order. Going

11


further, Carpenter contends that because no certificate has been issued, the Court cannot order a dangerousness evaluation. Resp. at PageID.1276. Carpenter's interpretation is incorrect.

Carpenter is still in the custody of the Attorney General under § 4142(d) because this Court's order placing him in such custody has not been modified or vacated. Further, courts have recognized that the statutory scheme can only make sense if a defendant who is not competent is allowed to be held for an additional period of time so that he can be examined for dangerousness. See United States v. Berry, 142 F.4th 184, 191–192 (4th Cir. 2025) (finding that the defendant is still subject to the custody of § 4241 for a reasonable period of time to determine whether civil commitment was appropriate); see also United States v. Godinez-Ortiz, 563 F.3d 1022, 1032 (9th Cir. 2009) ("§ 4246 necessarily contemplates the temporary commitment of that person so that the director can conduct the evaluation necessary to make the certification decision.").

While Carpenter is correct that a hearing on dangerousness requires a certification that his release would create a substantial risk of bodily injury to another person, he is wrong in arguing that no evaluation may be ordered without this certification. Carpenter misreads the statute. The statute does not state that an evaluation can be ordered only after a certification that his release would create a substantial risk of bodily injury to another person.

Carpenter has presented no authority supporting his interpretation of the statutory scheme. On the other hand, several courts have ordered an evaluation so that a dangerousness certification could be considered. See e.g., United States v. Ferguson, No. 04-14041, 2020 WL 5100099 at *7 (S.D. Fla. Aug. 5, 2020) (ordering that the "Defendant should be committed to the custody of the Attorney General and immediately transported to FMC-Butner so that a dangerousness evaluation can be conducted and the Director of FMC-Butner can determine whether to file a Section 4246(a) certificate"), report and recommendation adopted, No. 04-14041, 2020 WL 4922360 (S.D. Fla.

Aug. 21, 2020); United States v. Cerno, No. 22-0893, 2023 WL 8571362 at *10 (D. N.M. Dec. 11, 2023) (finding authority to order the defendant temporarily committed to the Attorney General's custody so that the director of the facility can determine whether a dangerousness certification should be issued); United States v. Truax, No. 07-1132, 2008 WL 4924785, at *2 (D. Ariz. Nov. 17, 2008) ("The Court concludes that it has the authority under § 4241(d) to return Defendant to the custody of the Attorney General for the purpose of allowing the doctors at FMC-Springfield to certify Defendant as dangerous pursuant to § 4246, should they find that such a certification is warranted."), aff'd, 325 F. App'x 591 (9th Cir. 2009).

Therefore, Carpenter may be evaluated for dangerousness so that the appropriateness of a certification may thereafter be considered.

### C. Location of the Section 4246(b) Evaluation

Carpenter next argues that if he is subject to an evaluation pursuant to § 4246(b), it must be conducted at a suitable facility closest to the court pursuant to 18 U.S.C. § 4247(b)[7] and § 4246(d).[8] Resp. at PageID.1277. The Government argues that the Attorney General has the

---

[7] 18 U.S.C. § 4247(b) states: "A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner. Each examiner shall be designated by the court, except that if the examination is ordered under section 4245, 4246, or 4248, upon the request of the defendant an additional examiner may be selected by the defendant. For the purposes of an examination pursuant to an order under section 4241, 4244, or 4245, the court may commit the person to be examined for a reasonable period, but not to exceed thirty days, and under section 4242, 4243, 4246, or 4248, for a reasonable period, but not to exceed forty-five days, to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court. The director of the facility may apply for a reasonable extension, but not to exceed fifteen days under section 4241, 4244, or 4245, and not to exceed thirty days under section 4242, 4243, 4246, or 4248, upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant."

[8] 18 U.S.C. § 4247(d) states: "If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release

13

discretion to determine the suitable facility and the Court should not interfere. Reply at PageID.1320.

The Court agrees with the Government. Once an individual is placed into the custody of the Attorney General for purposes of a psychiatric or psychological examination, the Court has no discretion to order treatment in a particular setting. United States v. Quintero, 995 F.3d 1044, 1050 (9th Cir. 2021) (finding that § 4241(d) does not allow a district court discretion to order a particular treatment setting); see also United States v. Hill, No. 21-20307, 2022 WL 17995538 at *2 (E.D. Mich. Dec. 29, 2022) (citing Quintero and finding it has no discretion to dictate treatment setting when committing an individual under § 4241(d)).

Carpenter's argument that § 4246(d) demonstrates that he should be evaluated under §4246(b) within Michigan is not persuasive. Section § 4246(d) addresses where a defendant should be housed after a determination is made that he be civilly committed. It requires the Attorney General to use "best efforts" to have a defendant released to an appropriate state official in the state where the defendant was domiciled or tried. Importantly, however, the domicile provision in § 4246(d), by its terms, only applies after a finding of dangerousness has been made.

---

would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General. The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment. The Attorney General shall make all reasonable efforts to cause such a State to assume such responsibility. If, notwithstanding such efforts, neither such State will assume such responsibility, the Attorney General shall hospitalize the person for treatment in a suitable facility, until—
  (1) such a State will assume such responsibility; or
  (2) the person's mental condition is such that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would not create a substantial risk of bodily injury to another person or serious damage to property of another;
> whichever is earlier. The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment."

### III. CONCLUSION

For the reasons stated above, the Court grants the Government's motion for an evaluation pursuant to § 4246 (Dkt. 239) and consideration by the appropriate facility director of a certification of dangerousness. The parties must submit a proposed order within seven days.

**SO ORDERED.**

Dated: November 14, 2025  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 14, 2025.

  s/Joseph Heacox
  JOSEPH HEACOX
  Case Manager